272 So.2d 439 (1973)
John G. DISCON et al.
v.
SARAY, INC. et al.
No. 9237.
Court of Appeal of Louisiana, First Circuit.
January 26, 1973.
Writ Refused March 1, 1973.
*440 Harry R. Cabral, Jr., Metairie, for appellants.
John G. Discon, New Orleans, for appellees.
Before LOTTINGER, ELLIS and BLANCHE, JJ.
BLANCHE, Judge.
The plaintiffs originally obtained an injunction against defendant, Ray Lamastus, in the trial court enjoining him from filling a portion of the Faciane Canal, which canal borders a subdivision known as North Shore Beach located on Lake Pontchartrain in St. Tammany Parish. That judgment was appealed to this Court and ultimately to the Louisiana Supreme Court, which set aside our judgment and reinstated the judgment of the district court.[1]
After the rendition of the judgment of the Louisiana Supreme Court, a rule for contempt was filed by plaintiff on September 12, 1972, alleging that defendant had obstructed the canal in violation of the judgment of the court. A hearing was held on this rule on October 20, 1972, after which the trial judge found that the defendant was in contempt of the injunction previously issued by him on December 1, 1970, and stated from the bench that he would grant the defendant fifteen days *441 from October 21, 1972, to purge himself from said contempt or in default thereof would impose upon him an appropriate sentence for his contempt of the judgment of the court. Prior to the hearing of the rule for contempt, the defendant filed seven different exceptions and/or motions which were heard by the court, all of which pleadings were dismissed by the trial judge.
Writs were applied for to this Court on October 25, 1972, alleging that no appeal would lie from the ruling of the trial judge which dismissed or set aside the exceptions and motions filed therein and that our failure to review the trial judge's ruling on the various motions and exceptions would result in his being ultimately sentenced for contempt of court. On the same day this Court acted on said writs, stating that the Court was without jurisdiction.
The record further reflects that on October 31, 1972, the defendant applied for writs to the Supreme Court of the State of Louisiana, and on the same day the Supreme Court denied the application, stating:
"Applicant must exhaust his remedies in the court of appeal before applying to this court."
We were not apprised of the foregoing action by the Supreme Court until November 1, 1972, when defendant, by letter to us of that date, formally requested that we reconsider the writs and issue a stay order inasmuch as the defendant was required by order of the district court to comply with its judgment by November 3, 1972, or be sentenced for contempt. Time being of the essence, we granted a stay order and issued the writs on our own motion, primarily because we had grave misgivings regarding our prior ruling which refused the writs for lack of jurisdiction.
After the granting of writs by this Court on November 2, 1972, the Louisiana Supreme Court on November 6, 1972, handed down its decision in Joint Legislative Committee of Legislature v. Strain, 268 So. 2d 629 (1972). The Court, in considering the correctness of our decision in dismissing the defendant's appeal for lack of jurisdiction, relied on the case of Louisiana State Board of Medical Examiners v. Bates, 258 La. 1049, 249 So.2d 127 (1971), which case made a careful analysis of "criminal contempt" as distinguished from "civil contempt." The Court stated:
"As we pointed out in Louisiana State Board of Medical Examiners v. Bates, 258 La. 1049, 249 So.2d 127 (1971), the similarity between criminal contempt and civil contempt is striking. We recognized there, despite the similarity between civil and criminal contempt, that criminal contempt is a crime in the ordinary sense; it is a violation of law, a public wrong which is punishable by fine and imprisonment or both. In the words of Mr. Justice HOLMES: `If such acts are not criminal, we are in error as to the most fundamental characteristics of crimes as that word has been understood in English speech.'
"Among other distinctions, criminal contempt differs from civil contempt in that criminal contempt involves a fixed punishment for the transgression, while civil contempt is merely a means of compelling compliance with lawful orders of the court. Louisiana State Board of Medical Examiners v. Bates, ibid." (Joint Legislative Committee of Legislature v. Strain, 268 So.2d 629, 634, 635)
We conclude that the contempt involved in this proceeding is no more than a civil contempt to be utilized as a means of compelling compliance with the lawful orders of the court and a matter over which we have supervisory jurisdiction under Article 7, Section 29, of the Louisiana Constitution. Wall v. Wall, 230 So.2d 420 (La. App. 1st Cir. 1969).
At issue in this writ is the trial court's refusal to grant seven certain motions and/or exceptions filed by the defendant, thereby forcing him to go to trial on the rule for contempt. These exceptions and *442 motions are entitled "Exception of Improper Venue," "Exception of Jurisdiction Ratione Personae," "Motion for Change of Venue," "Motion for Recusation," "Exception of Lis Pendens," "Motion for Jury Trial," and "Motion for Continuance."
The Exception of Improper Venue is brought on the basis that the proceeding before the court for contempt against the defendant was criminal in nature and not civil and that inasmuch as the defendant was a resident of the Parish of Orleans and not a resident of St. Tammany Parish that he should be tried at his residence and domicile on any criminal proceeding instituted against him. The fallacy of this argument is that the matter before the court is not a criminal proceeding but only a proceeding to enforce the lawful orders of the court which we have heretofore determined to be a "civil contempt."
The Exception of Jurisdiction Ratione Personae is grounded primarily on the same argument. Neither exception has merit, as the court has the authority to enforce lawful orders issued by it in matters over which it has jurisdiction.
The Motion for Change of Venue under LSA-C.C.P. art. 122 is based upon the contention that the plaintiffs have exerted undue influence on the proceeding inasmuch as they are substantial in number and are all voters of the Parish of St. Tammany, thus insinuating that pressure was brought on the trial court sufficient to deny defendant a fair trial. To the same effect is a charge leveled at the trial judge for allegedly stating that he intended to put the defendant in jail and had therefore prejudged the contempt rule before a hearing on the same. There was no tender of proof on this issue of undue influence, and in our opinion, it was designed to embarrass the trial judge. The matter has been before this Court as well as the Louisiana Supreme Court, which Court finally declared that plaintiffs are entitled to the free and unencumbered use of the canal. The matter before the Court had nothing to do with the merits of the case. The question was simply whether or not defendant has complied with the court's injunction not to block the canal. We do not think that counsel is sincere in believing that a multiplicity of resident plaintiffs could influence the trial judge on such a simple issue of fact, i. e., whether the defendant had obstructed the canal with landfill.
The Exception of Lis Pendens is based on the fact that the rule for contempt filed against defendant on June 24, 1971,[2] was not disposed of at the time defendant was brought to trial on the rule for contempt filed on September 12, 1972. Defendant cites no authority to support this exception but merely argues that he should not have been forced to trial on the "second rule" for contempt on exactly the same issue until the court disposed of the first rule. It may have been a better practice to have either consolidated the rules or dismissed those filed earlier. However, this failure has not resulted in any prejudice to the defendant. Lis pendens only applies when two or more suits are pending in a Louisiana court between the same parties in the same capacities and having the same object, Article 531 of the Code of Civil Procedure, and a mere reading of the article will reveal that it has no application to identical rules and/or motions filed in the same suit.
The Motion for Jury Trial was not filed until the morning when the matter was to be heard and for many reasons was properly overruled by the trial judge. The only reason ventured by defendant for entitlement thereto was that the matter before the court was criminal in nature and that he was entitled to a trial by jury *443 in a criminal proceeding. We have heretofore found that the matter before us is not a criminal proceeding.
The Motion for Continuance was also properly overruled. The granting of the motion for a continuance is within the sound discretion of the trial judge. LSA-C.C.P. art. 1601. Here the motion is based on future plans of the defendant to seek a declaratory judgment to have the court declare what course of action is available to him. Whatever course he may or may not take would not affect the judgment prohibiting him from blocking the canal, which said judgment is final and res judicata.
Finally, after the trial judge had ruled against the defendant on five of the seven motions and/or exceptions, the defendant filed his sixth motion, i. e., a motion to recuse the trial judge.[3] This motion was made on the grounds that the trial judge stated to both counsel for plaintiff and defendant that he intended to place the defendant in jail in regard to the alleged contempt of court. The trial judge, during the argument on the motion, stated that he indeed did make such a statement but that the statement was not precipitous, though it was a statement of his intention should the defendant fail to comply with the order of the court. In brief, though not a fact shown in the record, counsel relates that the trial judge did not place any such qualification on his intention to place the defendant in jail when the statement was originally made. The foregoing remarks of the trial judge are alleged to fall within subsection (5) of Article 151 of the Code of Civil Procedure which states that a trial judge may be recused when he "[i]s interested in the cause." We do not regard the statement of the trial judge as exhibiting any bias or prejudice against the defendant, but even if the judge were admittedly biased or prejudiced against the defendant, the same would not be a ground for recusal under Code of Civil Procedure Article 151.
In State v. Pailet, 246 La. 483, 165 So.2d 294 (1964), the Louisiana Supreme Court considered Article 303 of the Code of Criminal Procedure wherein the first cause of the five causes enumerated under that article was the recusation of the judge on the ground that he was interested in the cause. When the Pailet case was decided, the Code of Criminal Procedure had not been revised,[4] and thus the recusation provision under consideration by the Court was essentially the same as that provided for in LSA-C.C.P. art. 151(5). Article 151 of the Code of Civil Procedure has not been amended so as to add bias or prejudice as a ground for recusation as was done to the companion article in the Code of Criminal Procedure, and, accordingly, the holding of the Louisiana Supreme Court in Pailet is applicable to the case here. In Pailet the trial judge overruled appellant's motion to recuse without referring it to another judge as was required by Article 309 of the Code of Criminal Procedure.[5] The identical complaint is made by the defendant in this proceeding. In sustaining the overruling of the motion to recuse without referring it to another judge, the Court in Pailet stated:
"* * * The above cited jurisprudence points out that even allegations tending to show bias or prejudice are *444 not sufficient to sustain a charge that the judge has an interest in the cause since bias is neither the equivalent of interest nor is it a ground for recusation under the statute. State v. Laborde, supra [214 La. 644, 38 So.2d 371]. In State v. Phillips, supra [159 La. 903, 106 So. 375], the Court said: `For a judge to have an interest in a case within the meaning of the law, * * * some fact must exist that leads to the conclusion that it is to the judge's personal advantage, whether he would be influenced by such advantage or not, to decide the case or to seek to bring about a decision therein, for or against one of the parties to it, without reference to the law and the evidence.'" (State v. Pailet, 165 So. 2d 294, 297)
In City of Gretna v. Rossner, 154 La. 117, 97 So. 335 (1923), recusal of the Mayor in a Mayor's Court was sought in a contempt proceeding on the ground that he was interested in the cause. Under consideration was Article 338 of the Code of Practice which provided that a judge or justice of the peace may be recused in all civil and criminal causes in which he was interested. In holding that the Mayor was not required to recuse himself in a contempt proceeding, the Court stated:
"A contempt proceeding, however, is neither a civil nor a criminal cause in the proper acceptation of these terms, as its object is to vindicate the authority and dignity of the court. Contempt is not a statutory crime against the state, though considered in some degree as a criminal act, but is a disobedience of some rule or order of the court, or disrespect for the court.
"The judge presiding over the court is therefore the proper party to try the person committing the contempt, and is not subject to recusation for the cause of interest or prejudice. Noble Township v. Aasen, 10 N.D. 264, 86 N.W. 742; State v. Crum, 7 N.D. 299, 74 N.W. 992. It is well settled that no court except that against which the contempt is committed has power to punish it. Corpus Juris, paragraphs 69 and 83, verbo `Contempt.'
"For these reasons the mayor properly overruled the motion for his recusation on the ground of prejudice against the mover." (City of Gretna v. Rossner, 97 So. 335, 336Emphasis supplied)
The sole issue before the trial judge in the instant case was whether the authority and dignity of the court had been violated as a result of the defendant's refusal to comply with a lawful order of the court and as such it was not a matter in which he could have any personal interest.
For the above reasons, the writs issued herein are recalled and set aside and the relief prayed for by applicant is denied, at applicant's costs. The matter is further remanded to the Twenty-second Judicial District Court for proceedings in accordance with law.
Writs recalled and remanded.
NOTES
[1] Discon v. Saray, Inc., 255 So.2d 489 (La.App.1st Cir. 1971); 202 La. 997, 265 So.2d 765 (1972).
[2] We also note that the initial rule for contempt filed against defendant on June 2, 1971, and set for a hearing on June 11, 1971, was also not disposed of at the time defendant was brought to trial on the rule filed September 12, 1972.
[3] The seventh motion was a Motion for Continuance.
[4] The Code of Criminal Procedure was revised after the decision of the Louisiana Supreme Court in the Pailet case, supra, and under the Official Revision Comments of Article 671 of the Code of Criminal Procedure providing the grounds for recusation of the judge it is stated:

"Ground (1) is the most important ground for recusation. It continues the rule that interest in the cause is a ground for recusation, and adds the much needed provision that bias or prejudice shall also be a ground for recusation."
[5] Article 154 of the Code of Civil Procedure is a companion article and contains essentially the same provisions.